Jorge **RODRIGUEZ–CUERVOS,**
**Plaintiff, Appellant,**

v.

**WAL–MART STORES, INC.,** et al., **Defendants, Appellees.**

**No. 98–1732.**

United States Court of Appeals,
First Circuit.

Heard March 3, 1999.

Decided June 11, 1999.

Maricarmen Almodóvar–Díaz for appellant.

Frances R. Colón–Rivera, with whom Luis F. Antonetti and Goldman Antonetti & Córdova, P.S.C. were on brief, for appellees.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and ACOSTA,[*] Senior District Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellant Jorge Rodríguez–Cuervos ("Rodríguez") filed a complaint charging defendant-appellee Wal–Mart Stores, Inc. ("Wal–Mart") with illegal race and national origin discrimination in violation of federal law. Rodríguez now ap-

[*] Of the District of Puerto Rico, sitting by designation.

peals the district court's grant of summary judgment in favor of the former employer, Wal–Mart. We affirm.

## BACKGROUND

Rodríguez, who is a U.S. citizen born in Puerto Rico, began his employment with Wal–Mart in March 1991. At that time, Wal–Mart was preparing to open its first stores in Puerto Rico. Rodríguez assisted Wal–Mart with the opening of these stores and received training in order to become a store manager. Rodríguez participated in Wal–Mart training programs in Florida and Arkansas.

On March 7, 1992, Rodríguez was promoted to the position of Division Manager in Wal–Mart's Store Planning Division, and received a salary increase. As Division Manager, Rodríguez was responsible for the commencement of Wal–Mart's business operations in Fajardo and Hatillo—two municipalities located in the northeast and northwest of Puerto Rico, respectively.

On April 15, 1993, Rodríguez's supervisor rated his overall performance as "exceeded expectations." Under the heading "Overall Strengths," the supervisor described Rodríguez as possessing "a sense of urgency to help when and where he is needed to get Wal–Mart established in Puerto Rico" and "a good caring attitude towards associates."

Shortly after this evaluation, Rodríguez was appointed manager of the Wal–Mart store in Isabela. On March 19, 1994, Rodríguez's managerial performance was again evaluated. Although his supervisor cited several areas needing improvement, he concluded that Rodríguez's overall performance again "exceeded expectations." The evaluator described Rodríguez as a "good communicator" with a winning "Yes I Can" attitude.

Sometime in mid–1994, Rodríguez was named manager of the Fajardo store. On November 17, 1994, Rodríguez's performance as Fajardo store manager was evaluated by William Cahill, District Manager

for Wal–Mart in Puerto Rico, and Héctor Vázquez, Wal–Mart's Human Resources Director for Puerto Rico. Cahill and Vázquez informed Rodríguez of the results of this evaluation in a memorandum dated November 23, 1994. The memorandum outlined several "opportunities" for improvement in Rodríguez's management of the Fajardo store, and requested that Rodríguez submit a written action plan in response to the cited "opportunities." The Cahill/Vázquez memorandum also presented Rodríguez with an ultimatum: either step down from the position of manager of the Fajardo store and be re-trained, or stay on as manager and be held accountable for the results of an attitude survey to be conducted in three days' time, among all of the Fajardo associates. Rodríguez chose the latter option.

Good to their word, Cahill and Vázquez conducted an opinion survey of the Fajardo associates on November 26, 1994. On December 27, Rodríguez received the results of this survey, which ranked Rodríguez in several areas as compared with other managers at the store. Cahill and Rodríguez discussed the survey results, and on January 10, 1995, Cahill again evaluated Rodríguez's performance in Fajardo. This time Rodríguez received an overall performance rating of "didn't meet expectations." By memorandum dated May 3, 1995, Wal–Mart removed Rodríguez from the position of store manager. Rodríguez was subsequently demoted to an assistant manager position in the Hatillo store.

In due course, Rodríguez filed a complaint alleging Wal–Mart discriminated against him based on his race, ethnicity, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Wal–Mart moved to dismiss Rodríguez's complaint on the ground that it failed to state a prima facie case of race or national origin discrimination as required under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). In its subsequent Reply to Plaintiff's Response to Dispositive Motion, Wal–Mart also argued that Rodríguez failed to establish that its legitimate and non-discriminatory reason for Rodríguez's demotion was, in reality, a pretext for race or national origin discrimination.

On April 8, 1997, the district court issued an order advising the parties that the motion to dismiss would be treated as a motion for summary judgment. On April 30, the district court clarified its April 8 order and advised Rodríguez "to proceed to engage in discovery .... in order to adequately oppose the motion for summary judgment." Finally, on January 9, 1998, the district court granted summary judgment in favor of Wal–Mart. Rodríguez now appeals.

## DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party, Rodríguez. *See Dominique v. Weld,* 73 F.3d 1156, 1158 (1st Cir.1996).

██ Absent direct evidence of discrimination, a Title VII plaintiff must resort to the three-stage burden-shifting framework set forth in *McDonnell Douglas. See Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 96 (1st Cir.1996). Under this framework, the plaintiff shoulders the initial burden of adducing a prima facie case of unlawful discrimination. This includes a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him; (3) plaintiff was qualified for the employment he held; and (4) plaintiff's position remained open or was filled by a person whose qualifications were similar to his. *See St. Mary's Honor Center*

*v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 19 (1st Cir.1999). Establishment of a prima facie case creates a presumption of unlawful discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to rebut this presumption by articulating a legitimate, non-discriminatory reason for its adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998).[1] In the third and final stage, the burden devolves upon the plaintiff to prove that the reasons advanced by the defendant-employer constitute mere pretext for unlawful discrimination. *See Hicks,* 509 U.S. at 507–508, 113 S.Ct. 2742; *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir.1994). To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin. *See Shorette,* 155 F.3d at 13.

██ As mentioned above, *see supra,* note 1, at all times Rodríguez bears the burden of proving that Wal–Mart discriminated against him on the basis of race and/or national origin. Thus, at the summary judgment stage, Wal–Mart could prevail only if Rodríguez failed to adduce sufficient evidence from which a rational fact-finder could conclude that he was demoted because he is Puerto Rican. *See Shorette,* 155 F.3d at 12. Put another way, Rodríguez cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of inten-

1. It is important to note that the burden that shifts to the defendant-employer is only a burden of production, not a burden of persuasion. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.1991). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

tional racial, ethnic, or national origin discrimination on the part of Wal–Mart. On appeal, Rodríguez contends that he did adduce adequate evidence to generate a trialworthy issue as to whether Wal–Mart discriminated against him in violation of Title VII. In the alternative, Rodríguez argues that the district judge abused his discretion in denying his post-judgment request for additional time to conduct discovery in order to properly oppose Wal–Mart's motion for summary judgment. We disagree on both counts.

## A. Summary Judgment

■ For present purposes, we assume arguendo that Rodríguez carried his initial burden of establishing a prima facie case.[2] Further, it is clear that Wal–Mart satisfied its limited burden of production by articulating a legitimate, non-discriminatory reason for demoting Rodríguez: namely, his unsatisfactory performance. Thus, we focus on the ultimate issue: whether Rodríguez adduced sufficient evidence from which a rational factfinder could have inferred both that Wal–Mart's articulated reason was a pretext, and that its true reason for demoting Rodríguez was racial, ethnic, or national origin discrimination. *See Shorette*, 155 F.3d at 15.

To prove that Wal–Mart's proffered reason for demoting him was merely pre-

textual, Rodríguez points to two previous performance evaluations in which he was rated as exceeding the company's expectations. Rodríguez argues that because the contents of his prior evaluations contradict Cahill's findings in the January 10 evaluation, Cahill's findings must be pretextual. The problem with this argument is that in relying on his past performance evaluations, Rodríguez fails to take into account the fact that he was working in different capacities at different stores, under different supervisors with different expectations. As a result, Cahill's evaluation is not necessarily inconsistent with Rodríguez's past positive reviews. As the district court noted, from this evidence "a reasonable juror could only infer ... that Plaintiff at one time exceeded expectations ... under the first district manager but that the later ratings by Cahill in late 1994 and early 1995 found Rodríguez's performance lacking." (1/9/98 Op. & Order at 20.) The fact that Cahill may have had different expectations for Rodríguez, even if those expectations were contrary to those of Rodríguez's prior supervisors, does not support a finding of pretext. *See Orisek v. American Institute of Aeronautics & Astronautics*, 938 F.Supp. 185, 191 (S.D.N.Y.1996).

■ In addition to his history of positive performance evaluations, Rodrí-

---

**2.** We indulge this assumption because we are doubtful whether Rodríguez satisfied the fourth prong of the prima facie case, i.e., that Rodríguez's position remained open or was filled by a person whose qualifications were similar to his. Rodríguez failed to present any evidence on this element in any of his four pre-judgment motions. As a result, the district court's first Opinion and Order concluded that Rodríguez failed to establish a prima facie case. Instead of stopping there, however, the district court went on to test the sufficiency of the evidence on the issues of pretext and discrimination. The court found that Rodríguez had not presented sufficient evidence on those issues to survive summary judgment.

After judgment was entered in favor of Wal–Mart, Rodríguez filed a Request for Continuance Pursuant to Rule 56(f), for Reconsideration, and/or to Alter and Amend Judgment.

Attached to this motion was an affidavit by Rodríguez stating that after his demotion he was replaced by a less qualified individual. In its second Opinion and Order, the district court did not specifically rule on whether the affidavit was adequate to fulfill the fourth prong of Rodríguez's prima facie case: "Even if the court assumed that [the affidavit] helped Plaintiff satisfy the fourth prong of his *prima facie* case, the Court would not amend or vacate its final judgment. When the Court issued its January 9 Judgment, Plaintiff had not offered any evidence to fulfill the fourth prong ... Nonetheless, the Court continued its analysis on the premise that, even if he had proven the *prima facie* case, Plaintiff had not provided evidence that Defendants' reasons for demoting him were in fact due to racial, ethnic, or national origin discrimination." (4/16/98 Op. & Order at 9.)

guez offered comparative evidence of Wal–Mart's disparate treatment of non-Puerto Rican store managers. It is fundamental that "[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects." *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir.1996). The comparison cases need not be perfect replicas. *See Conward*, 171 F.3d at 20. Rather, the test is whether a "prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989). Thus, in offering this comparative evidence, Rodríguez bears the burden of showing that the individuals with whom he seeks to be compared "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). Rodríguez's evidence fails to satisfy this test.

The comparative evidence submitted by Rodríguez consists of a performance evaluation of Russ Steiner, a non-Puerto Rican manager of the Hatillo Wal–Mart store. Rodríguez contends that he and Steiner were similarly situated to the extent that they were both managers of Wal–Mart stores, and their evaluations identify many of the same weaknesses and areas of improvement. Rodríguez argues that despite these similarities, Steiner received a rating of "met expectations," while Rodríguez was rated as below expectations. Rodríguez further argues that Steiner was never subjected to an opinion survey, and was not demoted. In making this comparison, however, Rodríguez fails to take into account the fact that Steiner's evaluation was performed by a different supervisor,[3] covered a different period of time, and related to a different store. Because Rodríguez's and Steiner's evaluations differ in these material respects, their comparison fails to support a finding that Wal–Mart acted inconsistently in its treatment of them. In short, we agree with the district court that a comparison of these evaluations yields no evidence of discrimination, but rather evidence of different opinions by different evaluators under different circumstances.

Rodríguez next contends that he was subjected to disparate treatment by Wal–Mart to the extent that he was held accountable for the results of an opinion survey, while no other non-Puerto Rican managers were subject to such an evaluation procedure. Rodríguez has presented no evidence to support this claim. However, even assuming arguendo that Rodríguez was in fact the only manager subjected to an opinion survey, this is not sufficient to prove intentional racial or national origin discrimination on the part of Wal–Mart. While this may prove disparate treatment, there is simply no evidence that such treatment was on account of Rodríguez's status as a Puerto Rican. Absent such evidence, Rodríguez cannot avert summary judgment.

■■■ The same problem undermines Rodríguez's claim that the timing of his evaluations by Cahill raises a "serious inference of suspicious motives." (Pl.'s Resp. to Def.'s Dispositive Mot. at 15.) Cahill's initial November 17, 1994 evaluation was rendered only eight months after Rodríguez started as manager of the Fajardo store, and four months prior to his anniversary date of March 1995. Rodríguez points to Wal–Mart's Associate Handbook as evidence that it was Wal–Mart's standard operating procedure to evaluate its associates annually, on or near the associate's anniversary date. Rodríguez contends that Wal–Mart's deviation from this standard operating procedure is evidence that Wal–Mart's proffered reasons for demoting him were mere pretexts

---

3. In fact, Steiner's evaluation was performed by the same evaluator who, in March 1994, rated Rodríguez's performance as "exceeding expectations."

for discrimination.[4]   Again, we disagree. As this court has previously explained, "[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality of employers' nondiscriminatory business decisions." *Mesnick*, 950 F.2d at 825.  Although. the evaluation process may not have treated Rodríguez fairly, there is simply no evidence that Wal–Mart's hasty evaluation was a pretext for unlawful discrimination.

■   In sum, Rodríguez has presented evidence that the reasons proffered by Wal–Mart for his demotion may have been inaccurate.   He has also presented evidence that he may have been treated differently from other Wal–Mart managers to the extent that he was subjected to an opinion survey.  But the fatal weakness in Rodríguez's case is his failure to present any evidence that Wal–Mart's actions were predicated on the basis of race or national origin.[5]   Unfortunately for Rodríguez, Title VII does not stop a company from demoting an employee for any reason—

fair or unfair—so long as the decision to demote does not stem from a protected characteristic, here, race or ethnicity.  *See Mesnick*, 950 F.2d at 825.  Based on our careful review of the record, we agree with the district court that Rodríguez failed to present sufficient evidence with respect to the ultimate issue in this case:  whether Wal–Mart's proffered reason for demoting him was actually a pretext for unlawful discrimination.     .

## B.   Rule 56(f)

■   After the district court's grant of summary judgment, Rodríguez filed a motion requesting a continuance in order to conduct further discovery pursuant to Fed. R.Civ.P.  56(f).[6]   The gist of Rodríguez's argument is that he was misled by the district court into believing that the only issue to be resolved by summary judgment was the legal issue of whether § 1981 was intended to protect Puerto Ricans working in Puerto Rico.[7]   As a result, Rodríguez

**4.**  We note that our review of the Associate Handbook does not support Rodríguez's claim with respect to Wal–Mart's standard operating procedure.   The Handbook states that "[d]epending on your division, you may receive an evaluation every six months or once per year."   In addition, the Handbook states that the evaluations will be conducted "at or near" the associate's anniversary date. We are not convinced that the language in the Handbook is definite enough to establish the standard operating procedure claimed by Rodríguez.

**5.**  Rodríguez asserts that the district court's analysis is flawed to the extent that it conflicted with the Court's holding in *Hicks* that "the factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may*, together with the elements of the prima facie case, suffice to show intentional discrimination."   509 U.S. at 512, 113 S.Ct. 2742 (emphasis added).  Rodríguez contends that *Hicks* and *Woodman v. Haemonetics Corp.*, 51 F.3d 1087 (1st Cir.1995), both stand for the proposition that rejection of the employer's proffered reason is sufficient to infer intentional discrimination and therefore for a Title VII plaintiff to survive summary judgment.  (Pl.'s Appellate Br. at 22–23.)   We

disagree.  In *Hicks*, the Court made it clear that in order to survive summary judgment, a Title VII plaintiff must present sufficient evidence not only that the employer's proffered reason is false but also that the real reason is discrimination.  *See Hicks*, 509 U.S. at 515, 113 S.Ct. 2742.  Likewise, in *Woodman* this court recognized that a plaintiff-employee may rely upon the same evidence to establish both pretext and discrimination, provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.  *See Woodman*, 51 F.3d at 1092.  Neither *Hicks* nor *Woodman* stands for the mechanical *per se* proposition that Rodríguez advances.

**6.**  Fed.R.Civ.P. 56(f) provides:

   Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**7.**  The district judge first instructed the defendants to file a dispositive motion briefing the

claims that his pre-judgment discovery efforts and the evidence he submitted in opposition to Wal–Mart's motion were limited to that specific legal issue. In light of the district court's unexpected ruling on the merits, Rodríguez argues that the court's denial of his Rule 56(f) motion for a continuance constituted an abuse of discretion.

■ "It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters." *Ayala–Gerena*, 95 F.3d at 91. An appellate court will intervene in such matters "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Id.* (quoting *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 186 (1st Cir.1989)). After careful review of the record, we conclude that the district court acted within its discretion in denying Rodríguez's post-judgment motion for a continuance.

Although we agree that the district court did not act in accordance with its own instructions and orders, we do not agree that the court's inconsistency resulted in "substantial prejudice" to Rodríguez. Rodríguez's contention that he limited his discovery efforts and legal arguments to the specific legal issue of whether Puerto Ricans working in Puerto Rico are protected by § 1981 is disingenuous. It is clear from our review of the record that, like the district court itself, both parties disregarded the court's limiting order. In its motion to dismiss, Wal–Mart never even addressed the issue of whether § 1981 protected Puerto Ricans working in Puerto Rico, but rather directly challenged the merits of Rodríguez's claim. Similarly, each of Rodríguez's three oppositions marshaled factual evidence in support of his Title VII claim. In short, both parties blatantly disregarded the court's categorization of the issue and briefed all three stages of a § 1981 claim under the *McDonnell Douglas* framework.

■ In order to "savor the balm" of Rule 56(f), a party must move for a discovery continuance in a timely fashion. *Massachusetts Sch. of Law at Andover, Inc. v. American Bar. Assoc.*, 142 F.3d 26, 44 (1st Cir.1998). Although Rodríguez requested time for additional discovery as early as his initial opposition, he never claimed an inability to avert "the swing of the summary judgment axe." *Paterson–Leitch Co. v. Mass. Municipal Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir.1988). Instead, Rodríguez continually maintained that he had provided sufficient evidence to raise the specter of intentional racial and/or ethnic discrimination and withstand summary judgment on all grounds argued by Wal–Mart. Even Rodríguez's Rule 56(f) motion requested, in the alternative, that judgment be vacated on the ground that he had adduced sufficient evidence to preclude summary disposition of his claim.

In this respect, Rodríguez's position is similar to that of the Title VII plaintiffs in *Ayala–Gerena*, who did not claim that they were unable to oppose summary judgment because of incomplete discovery, but rather, maintained that "although incomplete ... [these records] clearly reveal discriminatory animus." *Ayala–Gerena*, 95 F.3d at 92 n. 4. Ordinarily, a party "may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful." *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44 (1st Cir.1998).

In addition, Rodríguez never sufficiently identified the outstanding discovery that he believed would influence the outcome of

issue of "whether a Puerto Rican could be subjected to discrimination based on race and ethnic origin in Puerto Rico within the meaning of 42 U.S.C. § 1981" at the Initial Scheduling Conference held on January 17, 1997. (4/8/97 Op. & Order.) On June 4, 1997, the

court reaffirmed that the "the issue the parties were instructed to brief—whether federal civil rights laws were intended to protect a Puerto Rican working in Puerto Rico—is a legal one and should not require extensive discovery by plaintiff." (6/4/97 Order.)

the summary judgment motion. *See Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994) (Rule 56(f) motion "should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."). In his third supplemental motion in opposition to summary judgment, Rodríguez merely stated that he was "unable to provide in this Motion the additional evidence he anticipated," (Pl.'s Supp. Mot. to His Opp. to Summ. Disposition at 2), without specifying what that additional evidence was or how it might affect the pending motion.

Finally, we agree with the district court that Rodríguez had adequate time to conduct discovery, or at least to marshal enough evidence to properly support a Rule 56(f) request for a continuance. Even assuming that Rodríguez did not initiate the discovery process until the district court's April 30 discovery order, almost nine months elapsed until judgment was granted on January 13, 1998.[8] During this time, Rodríguez never requested concrete measures by the district court to intervene in discovery. As a result, we conclude that the district court acted within its discretion in denying Rodríguez's Rule 56(f) motion for a continuance to conduct further discovery.

## CONCLUSION

For the above reasons, we **affirm** the district court's grant of summary judgment in favor of defendant-appellee Wal-Mart.

---

8. In his brief on appeal, Rodríguez suggests that the discovery process did not commence until the district court's April 30 order. However, there is evidence in the record that the discovery process was initiated prior to the Initial Scheduling Conference held on January 17, 1997.