# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2776

_____

Charles Schoelch,                          *
                                           *
            Appellant,                     *
                                           *    Appeal from the United States
      v.                                   *    District Court for the
                                           *    Eastern District of Missouri.
Emmett Mitchell, individually and in       *
official capacity; St. Louis County;       *
Michael Henderson, Capt., individually     *
and in official capacity; Cheryl Stone;    *
Kenneth Reed, Major, Internal Affairs      *
Officer, individually and in official      *
capacity; Roy Mueller, Director of         *
Department of Justice Services,            *
individually and in official capacity;     *
John Szuba, Unit Manager, St. Louis        *
County Justice Center; John and Jane       *
Does, individually and in official         *
capacity,                                  *
                                           *
            Appellees.                     *

_____

Submitted: March 9, 2010
    Filed: November 12, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Darien Lindsey attacked fellow pretrial detainee Charles Schoelch, leaving Schoelch with facial injuries that required surgery. Schoelch brought this action, pursuant to 42 U.S.C. §§ 1983, 1986, and 1988, against jail guard Emmett Mitchell, alleging that Mitchell failed to protect him from Lindsey. He also asserted that various supervisory officials and St. Louis County should be held liable for failing to protect him and for failing to train and supervise Mitchell. The district court[1] granted summary judgment for Mitchell and the other defendants, and we affirm.[2]

I.

On review of a summary judgment, we recount the facts in the light most favorable to Schoelch. After his arrest for felony theft on July 27, 2004, Schoelch was detained in the St. Louis County Justice Center pending trial. He was assigned to housing unit 6B, a direct supervision unit that typically held approximately 66 or 67 inmates. In direct supervision units, inmates may move freely about the housing unit, unless the unit is on "lock down" status and the inmates are confined in their cells. Lindsey, who awaited trial on charges of robbery, armed criminal action, and drug distribution, also was housed in unit 6B. As of September 7, 2004, Emmett Mitchell,

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]After the case was submitted, counsel for Mitchell filed a suggestion of death, pursuant to Federal Rule of Appellate Procedure 43(a)(1), notifying the court that Mitchell died on June 10, 2010, and that he has no personal representative. In response to an order to show cause why the appeal against Mitchell should not be dismissed, Schoelch moved to substitute a personal representative, but identified no such representative, and requested time to file a claim in probate proceedings in Missouri and report back to this court. Because resolution of Schoelch's claims against Mitchell facilitates the disposition of other claims at issue on appeal, we elect to proceed to the merits. *See Aswegan v. Harper*, No. 98-4036, 2000 WL 116051, at *1 n.1 (8th Cir. Jan. 12, 2000).

a fifty-nine-year-old guard who started working at the Justice Center in 1992, was assigned to work in unit 6B.

Lindsey, nicknamed "Big D," had a reputation among Justice Center officers for aggressiveness and misbehavior. An officer remarked in a report dated February 9, 2004, that Lindsey exhibited "bizarre behavior," including "depression, high anxiety, attention seeking, [and] sudden changes in behaviors from high to low," which the officer speculated might be "suicidal signs." On March 14, guard Sue Weatherford witnessed Lindsey fight inmate Demetrius Taylor. On June 1, after Amy Vaughn released Lindsey from his cell for a shower, he charged after inmate David Allen. Vaughn was unable to stop Lindsey until other officers responded to her call for assistance.

Schoelch's troubles began on October 27, 2004, when Mitchell placed him on lock down for sneaking food to his cell after lunch and for cursing. Schoelch and another inmate then allegedly caused a flood of water in unit 6B, although the source of the water is not apparent from the record. Upon discovering the flood, Mitchell announced the cancellation of activities and commissary privileges for all inmates. Mitchell allowed Lindsey to assist with cleaning up the water. Lindsey, evidently upset with Schoelch for causing a loss of privileges for all inmates in the unit, asked Mitchell to open Schoelch's cell so that he could assault him. Mitchell did not accede to Lindsey's request, but Lindsey paced near Schoelch's cell during the cleanup process and continued to threaten Schoelch.

Approximately thirty minutes after Lindsey first threatened Schoelch, Mitchell opened Schoelch's cell. Schoelch testified in an administrative hearing that he now "assume[s]" that Mitchell opened his cell so that it could be cleaned. Lindsey entered, saying that he intended to "kill" Schoelch. He grabbed Schoelch and slammed him against the wall. The incident lasted "[m]aybe a couple seconds," according to Schoelch, and ended when another inmate intervened.

After that incident, Schoelch sought neither medical attention nor a transfer from unit 6B. He did not report an assault to Mitchell, because he suspected that Mitchell was aware of the incident. Schoelch complained to Lieutenant Michael Henderson about being locked in his cell as punishment for the flooding incident, but he did not report an assault to Henderson. Schoelch mentioned an assault to Lieutenant Cedric Kelly, but did not name the assailant. According to Schoelch, he and Lindsey "agreed [and] shook hands," and "nothing was ever more said about" the incident.

Early on the morning of November 12, Mitchell opened Joshua Hoth's cell door after Hoth failed to respond to orders to prepare for a court appearance. Lindsey entered, pulled Hoth out of his cell, and said "get your ass out here for court." Lindsey released Hoth from his grasp when Hoth exited the cell. Hoth approached Mitchell, complained about Lindsey entering his cell, and then proceeded to his court appearance.

Also on November 12, after the incident with Hoth, Lindsey had another altercation with Schoelch. As inmates stood in line for lunch, Lindsey yelled at Schoelch for making excessive noise in the unit and pushed him. Mitchell was at a nearby podium from which he had an unobstructed view of the push, but he did not intervene. Schoelch turned away from Lindsey. After Schoelch picked up a lunch tray and sat down to eat, Lindsey approached him and, according to Schoelch, "started swinging." Schoelch slid his chair away from Lindsey, but Lindsey connected with one blow to the face. Approximately ten seconds elapsed between when Lindsey approached Schoelch and the end of the attack. Mitchell was looking in the direction of Lindsey and Schoelch during the attack, but did not respond.

Schoelch continued eating his lunch before recognizing that he was bleeding. Holding his face, he approached Mitchell and asked to be seen by a nurse. He also asked Mitchell to open his cell door. Mitchell opened the cell door, and Schoelch

proceeded to his cell. Mitchell called Henderson and asked him to check on Schoelch. After Henderson arrived, Schoelch informed Henderson that Lindsey punched him at lunch. Soon after the attack on Schoelch, Hoth informed Henderson about Lindsey entering his cell to rouse him.

Henderson called for a nurse to assist Schoelch, and then escorted Lindsey to the eighth floor of the jail to be placed on lock down status and segregated from other inmates. Schoelch was taken to a hospital, where a CAT scan revealed several facial fractures. He also lost teeth in the attack. Schoelch underwent reconstructive surgery approximately one month later. Following an internal investigation, Mitchell was fired for violations of several jail policies arising from the incidents of October 27 and November 12.

Schoelch brought this action against Mitchell, several supervisory officials, and St. Louis County.[3] He alleged that Mitchell and the supervisory officials failed to protect him from Lindsey's assaults. Schoelch also asserted that the officials knew about inadequacies in Mitchell's training and performance, and that Lindsey should have been incarcerated in a more secure housing unit. According to Schoelch, municipal liability should be imposed against St. Louis County.

The district court granted summary judgment for the defendants. The court ruled that the record did not show any defendant failed to respond reasonably to a substantial risk of harm. The court also found that Schoelch's allegation that Mitchell received insufficient training and supervision was unsupported by evidence, and determined that classifying Lindsey such that he was housed in a direct supervision unit with Schoelch did not constitute deliberate indifference.

---

[3]Although the complaint also names "John/Jane Does," we find no record that Schoelch identified these parties.

## II.

We review the grant of summary judgment *de novo*, construing the evidence in the light most favorable to Schoelch and drawing all reasonable inferences in his favor. Summary judgment is appropriate when the record presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. We may affirm on any basis supported by the record. *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009).

The Eighth Amendment requires officials to "provide humane conditions of confinement" by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Schoelch's custodians had a comparable duty to protect Schoelch as a pretrial detainee, although this duty arose under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). To prove unconstitutional failure to protect from harm, Schoelch must show (1) an "objectively, sufficiently serious" deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, *Farmer*, 511 U.S. at 834 (internal quotation omitted), and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm. *Id.* The second requirement is a subjective test; the defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

We begin with Schoelch's claim that Mitchell violated his constitutional rights by failing to protect him from Lindsey. Schoelch suggests that the October 27 incident on its own demonstrates a constitutional violation. The district court concluded that Schoelch's "allegation that defendant Mitchell opened his cell so that Lindsey could hurt [him] is not supported by the evidence," but this is not sufficient reason to dispose of the claim. Even assuming the court was correct about Mitchell's purpose, Schoelch need not prove that Mitchell acted with specific intent to harm.

-6-

"*Farmer* stands for the broad proposition that deliberate indifference includes something more than negligence but less than actual intent to harm." *Newman v. Holmes*, 122 F.3d 650, 653 (8th Cir. 1997). If Schoelch can show that Mitchell evinced deliberate indifference to his safety by opening the cell door, Schoelch might satisfy the subjective prong of his constitutional claim.

There may well be a submissible case of *subjective* deliberate indifference on this record. The question is at least close enough that we prefer to resolve the case on other grounds. Although Mitchell may legitimately have wanted Lindsey to clean Schoelch's cell, he also knew that Lindsey had requested only thirty minutes earlier that Mitchell open the cell so that Lindsey could enter for the specific purpose of assaulting Schoelch. The presence of a legitimate reason for opening the cell does not foreclose the possibility that Mitchell was deliberately indifferent to the fact that allowing Lindsey, in particular, to enter for any purpose created a substantial risk of harm to Schoelch.

Assuming for the sake of argument that Schoelch's claim survives the subjective prong, however, we conclude that Schoelch failed to present sufficient evidence to establish that he suffered an objectively serious deprivation. The complaint alleges no injury, and the record includes no evidence that Schoelch suffered physical or mental injury on October 27. In response to an interrogatory asking him to describe "every mental or physical injury" that he claimed to suffer as a result of the occurrences mentioned in the complaint, Schoelch asserted no injury on October 27. He described only injuries suffered on November 12.

To establish a "conditions-of-confinement" claim, including one based on an alleged failure to protect, *see Wilson v. Seiter*, 501 U.S. 294, 303 (1991), Schoelch must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 303). Schoelch must demonstrate that he suffered

"extreme deprivations," meaning that he was denied the "minimal civilized measure of life's necessities." *Id.* at 9 (internal quotation omitted); *see Farmer*, 511 U.S. at 834. The objective standard that must be satisfied in a conditions-of-confinement claim differs from that applicable in the excessive force context, where the malicious and sadistic use of force by *prison officials* always violates "contemporary standards of decency." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 9); *see also Hudson*, 503 U.S. at 27 (Thomas, J., dissenting) (disagreeing with the Court's holding that serious injury is not required to prove an excessive force claim under the Eighth Amendment when the injury requirement "remains applicable to all other prison deprivations").

Just as an inmate alleging unconstitutional conditions of confinement based on an unreasonable delay in the provision of medical care, *see Wilson*, 501 U.S. at 303, must show that the delay caused objectively serious harm, *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995), Schoelch must show that the harm he suffered from Mitchell's alleged failure to protect him was objectively serious. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Because Schoelch presented no evidence that he suffered an objectively serious mental or physical injury from the conditions of his confinement on October 27, or that the conditions on that date (*i.e.*, the failure to protect him from Lindsey on that date) are likely to cause serious injury in the future, *see Helling v. McKinney*, 509 U.S. 25, 34 (1993), he has not satisfied the objective component of his failure-to-protect due process claim.

As to the November 12 assault that caused Schoelch's injury, we conclude that the claim fails for lack of proof on the subjective element. There is insufficient evidence to establish that Mitchell was deliberately indifferent to a substantial risk of serious harm to Schoelch on that date. The October 27 incident between Schoelch and Lindsey resulted in no injury, and the two men reconciled. Between October 27 and November 12, Schoelch and Lindsey recreated, dined, and resided together in unit 6B,

under Mitchell's watch, without incident. Schoelch did not request a transfer from unit 6B or otherwise suggest to anyone that Lindsey posed a threat.

Although Lindsey had a history of fighting, the incidents with inmates Demetrius Taylor and David Allen occurred well before Schoelch's incarceration at the Justice Center. Mitchell had heard about the June 1 incident involving Allen, but had not reviewed the incident report; otherwise, Mitchell was unaware of Lindsey's aggressive reputation.

Lindsey's altercation with inmate Hoth on November 12 did not place Mitchell on notice of a substantial risk that Lindsey would violently attack Schoelch at lunch. Nor did Lindsey's lunch-line push of Schoelch rise to that level of seriousness. Schoelch responded to the push by moving through the lunch line and sitting down to eat. He did not seek assistance from Mitchell or any officer. The attack that followed played out so quickly that Schoelch did not even have time to raise his arms for protection before Lindsey landed the blow, and it was finished before Mitchell reasonably could have intervened.

Schoelch's briefing makes much of Mitchell's behavior after the attack, including his failure to summon medical assistance for Schoelch despite conspicuous facial injuries. Mitchell's post-attack behavior, however, does not support Schoelch's claim that Mitchell failed to protect Schoelch from a harm that already had occurred. Nothing about Mitchell's alleged indifference to Schoelch's post-attack plight strengthens the case that Mitchell subjectively recognized a substantial risk of serious harm before Lindsey's attack. The evidence shows only that it was a surprise attack. Therefore, the district court correctly concluded that Schoelch failed to present sufficient evidence to show that Mitchell violated his constitutional rights.

III.

Schoelch also appeals the judgment in favor of Henderson, Cheryl Stone, Kenneth Reed, Roy Mueller, and John Szuba, in their individual capacities. Schoelch alleged in his complaint that these officials were liable for his injury, because they failed to protect him, failed to train and supervise Mitchell, and permitted Lindsey to remain in a direct supervision unit, despite the serious charges that he faced and his altercations with other inmates. During Schoelch's incarceration at the Justice Center, Henderson was a lieutenant at the Justice Center, and Stone was manager for unit 6B. As part of their duties, Henderson and Stone toured unit 6B regularly to make themselves available to inmates with complaints. The other officials named in Schoelch's complaint held high-level positions within the St. Louis County Department of Justice Services. Reed was an internal affairs officer; Mueller was the Department's director; and Szuba held a superintendent position.

Although Schoelch's complaint states that these defendants knew of and permitted Mitchell's "pattern and practice of inappropriate behavior," the record does not support that allegation. Schoelch failed to notify either Henderson or Stone that Lindsey entered his cell on October 27 until after the November 12 attack. There is no evidence that any of these defendants knew that Lindsey had entered Schoelch's cell until after the November 12 attack. The defendants were not present in the lunch area when Lindsey pushed and subsequently punched Schoelch.

Nor does the record contain evidence that the officials inadequately trained and supervised Mitchell. To the contrary, Mitchell was trained to follow several policies aimed at preventing incidents such as those that occurred on October 27 and November 12. As discussed, Lindsey's altercations with inmates Taylor and Allen happened long before Schoelch's incarceration, and the officials had no duty to segregate Lindsey perpetually due to those earlier incidents or because he faced significant criminal charges. *See Norman v. Schuetzle*, 585 F.3d 1097, 1105 (8th Cir.

-10-

2009). The district court thus correctly granted summary judgment for Henderson, Stone, Reed, Mueller, and Szuba.

## IV.

Schoelch also appeals the district court's dismissal of his claims for municipal liability against St. Louis County and various officials in their official capacities. Because we conclude that he has not presented a submissible case that any officer committed a constitutional violation, the claim for municipal liability necessarily fails as well. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

\*  \*  \*

The judgment of the district court is affirmed. Schoelch's motion to supplement the record is denied.

_____