# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-1850

_____

Lixin Liu,                                        *
                                                  *
    Plaintiff - Appellant,             *
                                                  *
v.                                                *    Appeal from the United States
                                                  *    District Court for
BASF Corporation; BASF Plant                      *    Southern District of Iowa.
Science, L.L.C., doing business as                *
Exseed Genetics,                                  *    [UNPUBLISHED]
                                                  *
    Defendants - Appellees.            *

_____

Submitted: January 12, 2010
Filed: February 14, 2011

_____

Before LOKEN,[1] Chief Judge, JOHN R. GIBSON,[2] and WOLLMAN, Circuit Judges.

_____

PER CURIAM.

---

[1] The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2] The Honorable John R. Gibson retired January 26, 2011. This opinion is consistent with his vote at the panel's conference following oral argument on January 12, 2010.

Lixin Liu appeals from an order of summary judgment entered against him on his claims of employment discrimination. Liu, a citizen of China, worked as an associate scientist at BASF Plant Science, L.L.C. ("BPS"), and resided legally in the United States on a temporary work visa secured by his employer. He was employed at BPS's plant genetics research facility in Ames, Iowa. In the fall of 2005, shortly before Liu's temporary visa expired, BPS decided to move its research group from Iowa to Research Triangle, North Carolina. The company did not offer Liu a position in North Carolina and told him his employment would end in less than six months. Liu filed a complaint against BPS with the Iowa Civil Rights Commission and cross-filed his complaint with the Equal Employment Opportunity Commission ("EEOC"). Both agencies dismissed the complaint and the EEOC issued a right to sue letter on January 11, 2007. On April 10, 2007, Liu brought this action, alleging that his employment was terminated due to national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, and in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216. The district court[3] granted the summary judgment motion filed by BASF Corporation and BPS. Liu appeals the judgment only with respect to BPS.[4] We affirm.

The parties agree to virtually all of the material facts. BPS, whose headquarters are in Research Triangle Park, North Carolina, is engaged in the research, development, and marketing of agronomic traits. Liu was hired by BPS in January 2003 to work as a research associate, and his position was later reclassified to that of associate scientist. Liu held a student visa at the time he began working for BPS.

[3]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred pursuant to 28 U.S.C. § 636(c).

[4]In his resistance to the defendants' summary judgment motion, Liu admitted that summary judgment was appropriate on his claims against BASF Corporation. The district court accordingly entered judgment on that basis, and in his brief Liu speaks only of BPS.

BPS sponsored Liu's H1 visa application, which the government requires nonimmigrant employees to obtain. See 8 C.F.R. § 214.2(h). Liu's H1B visa was approved on May 5, 2003, and remained valid until May 20, 2006.

In January 2004, BPS also began pursuing permanent residency for Liu, as it had for other employees in comparable positions, using the services of an immigration law firm to undertake the process of securing an EB-3 permanent immigrant visa for Liu. This multi-step process culminates, if successful, in the issuance of a green card. An application for alien labor certification must be filed at least one year prior to the expiration of the nonimmigrant's H1B visa for the nonimmigrant to remain eligible for annual renewals of the H1B visa while the application is being processed. American Competitiveness in the Twenty-First Century Act of 2000, 114 Stat. 1251, 1253-54 (2000).

The immigration law firm completed all the steps necessary to file the application more than one year before Liu's H1B visa expired and prepared the application in February 2005. It could not file the application, however, until Liu signed a form ETA 750, Part B "Statement of Qualifications of Alien." Liu had signed a copy of the document in mid-2004, but his signature was needed on the corrected copy prepared by the law firm. Liu had become concerned about changes that the United States Department of Labor was making in the processing of labor certification applications, believing that those changes would significantly delay the approval of his application; consequently, he decided not to sign the document. Liu believed that he would be unable to visit his family in China until he obtained his green card, and he wanted to discuss with the law firm the option of starting the process again in the hope it would be completed more rapidly under the new Department of Labor system. BPS told him that he could receive permission to travel abroad while waiting for his green card and that there was no reason to believe the process would proceed more rapidly if he started over. In an affidavit, Liu asserts that his unit director told him in late March 2005 that he did not need to sign the form

ETA 750, Part B. However, he acknowledges that the law firm strongly advised him to sign the form and that he understood that his application could not be filed without it. Moreover, he also understood that his decision not to sign the form meant that he would not be eligible for employment in the United States after his work visa expired in May 2006.

Liu inquired if he might help himself by applying for another position within the company, and ultimately he did apply for more than a dozen positions. Because of his visa situation, however, he was not given a different position.

As recounted above, BPS decided in the fall of 2005 to consolidate its research department into a single unit to be located in Research Triangle Park, North Carolina. In October 2005, the company notified ten employees, including Liu, that their research positions in Ames would be eliminated as of March 31, 2006. BPS offered the other nine employees, four of whom are Asian, positions in the new location. On October 14, 2005, BPS officials told Liu that BPS would not offer him a position in North Carolina because he would not be able to work much beyond the March 31, 2006, transfer date and that his employment would end that day. His last day of employment with BPS was March 8, 2006.

As indicated earlier, Liu filed a complaint against BPS with the Iowa Civil Rights Commission and cross-filed with the EEOC. The Iowa Commission administratively closed the complaint on November 29, 2006, and the EEOC dismissed the charge and notified Liu of his right to sue on January 11, 2007. He subsequently filed this action, alleging that his employment was terminated due to unlawful national origin discrimination in violation of Title VII of the Civil Rights Act and the Iowa Civil Rights Act. It is from the district court's order granting summary judgment in favor of BPS that Liu now appeals.

Summary judgment is warranted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review de novo the district court's grant of summary judgment, Schoelch v. Mitchell, 625 F.3d 1041, 1045-46 (8th Cir. 2010), and we view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn therefrom. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

I.

Liu alleges that BPS violated Title VII by discriminating against him because of his national origin. See 42 U.S.C. § 2000e-2(a)(1). He also claims the protection of the Iowa Civil Rights Act, Iowa Code § 216.6(1)(a). Because the Iowa Civil Rights Act was modeled after Title VII and Liu has presented no separate argument or citations with respect to Iowa law, we jointly consider his federal and state claims. See Hannoon v. Fawn Eng. Corp., 324 F.3d 1041, 1046 (8th Cir. 2003). To make a prima facie showing of discrimination, Liu must establish that: 1) he is a member of a protected class; 2) he met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) he was treated differently than similarly situated employees who were not members of the protected class. Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005). BPS concedes that Liu has satisfied the first and third elements of his claim. Thus we need consider only whether Liu met his employer's legitimate expectations and whether he was treated differently than similarly situated employees.

A.

BPS argues that Liu did not meet its legitimate expectations because he would not have been qualified for a position in North Carolina, as his temporary work visa was set to expire less than two months after the reorganization was to be effective.

BPS acknowledges, however, that Liu was qualified for the position he held at the time his employment was terminated.

B.

We turn, then, to the only remaining element of disparate treatment, from which an inference of discrimination could be drawn if there was evidence that similarly situated employees who were not of Chinese origin were treated differently than Liu. See Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850-51 (8th Cir. 2005). Liu claims that he satisfies this element because he was treated differently than his co-workers who did not require authorization or had already obtained authorization to work in this country. Liu compares himself to the other nine employees in his unit who were offered transfers to North Carolina upon the closing of BPS's Ames facility. Of those nine, four were Asian. One was a Korean national with a green card; two were American citizens of Chinese ancestry; and one was a Chinese citizen with a green card. None of the nine shared Liu's immigration status.

Liu's argument is premised on his assertion that with BPS's cooperation he could have renewed his H1B visa for an additional thirteen months beyond May 2006, and that BPS's refusal to work with him to extend it constituted discrimination based on national origin. The only support Liu offers for his assertion is his own statement to that effect. In responding to a summary judgment motion, an unsupported self-serving allegation is ineffective. Bass v. SBC Communications, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005). Moreover, Liu does not dispute the fact that he never asked BPS to file for an extension of his H1B visa. Had Liu signed the form ETA 750, Part B when BPS's immigration attorneys requested that he do so, BPS could have requested extensions of his H1B visa in one-year increments. As Liu acknowledges, the application for alien labor certification could not be filed without his signature.

-6-

Because the premise of Liu's argument is incorrect as a matter of law, his argument fails. Even if BPS could have effectuated an extension of his H1B visa, the record is wholly devoid of any evidence that its failure to do so had anything to do with Liu's national origin. As the district court noted, Liu's argument conflates national origin and alienage. Cf. United States v. Loaiza-Sanchez, 622 F.3d 939, 941 (8th Cir. 2010). His employment was terminated because of his immigration status, not his Chinese ancestry.

Finally, Liu asserts that BPS also discriminated against him based on his national origin by refusing to begin anew the green card application process or allowing Liu to pay for the associated costs in doing so. BPS had already incurred the time and expense to complete all the steps required of an employer, and its decision not to start the process anew was a business decision which is not our place to question. See Ward v. Int'l Paper Co., 509 F.3d 457, 462 (8th Cir. 2007). In any event, Liu can point to no evidence in the record that BPS's decision had anything to do with his Chinese ancestry.

## II.

We conclude that the district court appropriately entered summary judgment. Liu has not established that BPS gave different treatment to similarly situated employees who were not members of his protected class, and thus he has not established a prima facie case. Even if he had established a prima facie case, the record would not support a finding that BPS's proffered reason for terminating Liu's employment was pretextual.

## III.

The judgment is affirmed.

_____