**Oded ABRAVANEL, Plaintiff,**

v.

**STARWOOD HOTELS AND RESORTS WORDWIDE, INC., et als., Defendants.**

**Civil No. 12–2050 (ADC).**

United States District Court, D. Puerto Rico.

Signed March 26, 2015.

136

Augusto Jose Rosario–Chavez, Rosario Chavez Law, San Juan, PR, for Plaintiff.

Carlos E. George–Iguina, Jose F. Benitez–Mier, O'Neill & Borges, San Juan, PR, for Defendants.

### OPINION AND ORDER

AIDA M. DELGADO–COLON, Chief Judge.

Plaintiff, Oded Abravanel ("plaintiff" or "Abravanel"), brings suit against Starwood Resorts and Hotels Worldwide ("defendant" or "Starwood"), alleging, *inter alia*, that he was discriminated against in his employment due to his national origin, was retaliated against, and ultimately terminated without just cause. **ECF No. 1.** Abravanel invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* Commonwealth of Puerto Rico's Act No. 100, P.R. Laws Ann., tit. 29, § 467 *et seq.;* Commonwealth Act No. 115 of December 20, 1991, as amended, P.R. Laws Ann., tit. 11, § 194 *et seq.;* and, the Commonwealth's Unjust Dismissal Act, P.R. Laws Ann., tit. 29, § 185a *et seq. Id.*

Before the Court is Starwood's motion for summary judgment, statement of uncontested facts, reply, and reply statement; as well as plaintiff's opposition to defendants' summary judgment and memorandum in support thereof, response to defendants' statement of facts and counter-statement of material facts. **ECF Nos. 20, 20–1, 25, 25–1, 30, 30–1.** At issue is whether defendant is entitled to the *Faragher–Ellerth* defense; and, if not, whether plaintiff's allegations and proffered evidence support causes of action for Title VII national origin discrimination and retaliation.

## I. Factual Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of facts, plaintiff's responses thereto, and defendant's reply statement.

**ECF Nos. 20–1, 25–1, 30–1.** Consistent with the summary judgment standard, the Court states the facts in the light most favorable to plaintiff, the nonmoving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006).

Abravanel was born in Israel on September 12, 1971. **ECF No. 20–1 at ¶ 1; ECF No. 25–1 at ¶ 1.** Starwood is a corporation, which operates several hotel brands around the world, and is a member of Sheraton PR Management, LLC, which operates the St. Regis Bahia Beach Resort, in Río Grande, Puerto Rico. **ECF No. 20–1 at ¶ 2; ECF No. 25–1 at ¶ 2.**

At the time Starwood hired him, Abravanel was in the United States under an H–1B visa. **ECF No. 20–1 at ¶ 3; ECF No. 25–1 at ¶ 3.** His H–1B visa classification had been approved as of July 2, 2005, while working with the Mandarin Oriental Hotel in Miami, Florida. *Id.* The H–1B visa has a maximum duration of six (6) years. *Id.* On April 2, 2007, Starwood hired Abravanel as Front Desk Manager for the St. Regis Resort in Ft. Lauderdale, Florida. **ECF No. 20–1 at ¶ 4; ECF No. 25–1 at ¶ 4.** As the result of his employment with Starwood at the St. Regis Hotel in Ft. Lauderdale, Starwood presented a change of employer petition to modify Abravanel's H–1B visa to reflect his current employer. This request was approved on July 7, 2007. **ECF No. 20–1 at ¶ 5; ECF No. 25–1 at ¶ 5.** On July 28, 2008, Abravanel transferred to the W Hotel operated by Starwood in Ft. Lauderdale to work as Welcome Desk Manager. **ECF No. 20–1 at ¶ 6; ECF No. 25–1 at ¶ 6.** As the result of his employment with Starwood at W Hotel in Ft. Lauderdale, Florida, Starwood filed a change of employer petition to modify Abravanel's H–1B visa to reflect his current employer. The approval of this request was notified

on January 23, 2008. **ECF No. 20–1 at** ¶ 7; **ECF No. 25–1 at** ¶ 7.

On July 7, 2010, Abravanel was transferred to the St. Regis Bahía Beach Resort in Río Grande, Puerto Rico ("the Bahía Beach Resort"). He occupied the position of Director of Front Office and began to work during the resort's opening phase. **ECF No. 20–1 at** ¶ 8; **ECF No. 25–1 at** ¶ 8. As a condition of employment to move to Puerto Rico in 2010, Abravanel was promised that Starwood would work on his permanent residency application. **ECF No. 25–1 at** ¶ 37; **ECF No. 30–1 at** ¶ 37. In addition, Starwood presented a change of employer petition to modify Abravanel's H–1B visa to reflect his current employer. The notice of the approval of this request was notified March 28, 2011. According to the United States Customs and Immigration Service ("USCIS") Approval Notice, Abravanel's H–1B visa expired on August 25, 2011. **ECF No. 20–1 at** ¶ 9; **ECF No. 25–1 at** ¶ 9. From October 2010, Ms. Sharon D. Bathory ("Bathory") acted as the Human Resources Director of the Bahía Beach Resort. **ECF No. 20–1 at** ¶ 10; **ECF No. 25–1 at** ¶ 10. The St. Regis Bahía Beach Resort retained the law firm of Krupin and O'Brien, LLC (the "Law Firm"), at its own cost, to handle immigration law matters regarding Abravanel's H–1B visa and permanent resident petition. Bathory was in charge of managing all communications with the law firm. **ECF No. 20–1 at** ¶ 11; **ECF No. 25–1 at** ¶ 11.

While employed at the St. Regis Bahía Beach Resort, Starwood agreed to file a permanent residence petition on Abravanel's behalf. **ECF No. 20–1 at** ¶ 12; **ECF No. 25–1 at** ¶ 12. As part of the labor certification requirements, the hotel published ads for a St. Regis Director of Front Office position in several local newspapers, from June to October of 2011. **ECF No. 20–1 at** ¶ 13; **ECF No. 25–1 at** ¶ 13.

On August 5, 2011, Bathory delivered a letter to Abravanel, informing him that his non-immigrant visa would expire on August 25, 2011 and that Starwood had approved a personal leave of absence for him, starting on October 20, 2011, when Abravanel would have used all accrued and unused vacation and sick time. **ECF No. 20–1 at** ¶ 14; **ECF No. 25–1 at** ¶ 14. According to the letter, the personal leave of absence provided in the hotel's policies would end on December 20, 2011. *Id.* The letter also informed Abravanel that, if his work authorization situation was not resolved by December 20, 2011, he would not be able to return to work and his employment with Starwood would be deemed terminated. *Id.* He was also informed that he could reapply for employment with Starwood after acquiring a status that would authorize him to work in the United States. *Id.* Abravanel acknowledged that he was aware that he was no longer authorized to work in the United States after August 25, 2011. **ECF No. 20–1 at** ¶ 16; **ECF No. 25–1 at** ¶ 16.

As a result of the expiration of his H–1B visa, Abravanel relocated to Israel. **ECF No. 20–1 at** ¶ 16; **ECF No. 25–1 at** ¶ 16. During his absence from Puerto Rico, Abravanel communicated with Bathory via email. **ECF No. 20–1 at** ¶ 18; **ECF No. 25–1 at** ¶ 18. When he questioned why his position at the Bahía Beach Resort had been published in several newspapers, Bathory explained that the hotel needed someone to cover his position in case his work authorization did not come through by the end of his personal leave of absence. *Id.* She also reminded Abravanel that the permanent residence procedure could take up to one (1) year to conclude. **ECF No. 20–1 at** ¶ 19; **ECF No. 25–1 at** ¶ 19. Abravanel also asked for Bathory's help locating other job opportunities with Starwood outside of the United States.

*Id.* After Abravanel's departure, the Bahía Beach Resort hired David Mejía ("Mejía") as Director of Front Office on November 21, 2011. Mejía is a Venezuelan national, who, at the time, was a permanent resident. **ECF No. 20–1 at ¶ 17; ECF No. 25–1 at ¶ 17.** Mejía resigned from his employment on January 29, 2012. *Id.*

On December 9, 2011, after completing all the requirements, Starwood filed a labor certification application with the United States Department of Labor. **ECF No. 20–1 at ¶ 20; ECF No. 25–1 at ¶ 20.** On December 20, 2011, Abravanel's personal leave of absence expired. Because he did not have authorization to work in the United States and had already used all available leaves under Starwood's policies, Abravanel could not continue to work for Starwood. Abravanel had been advised that his employment would terminate on this date unless the work authorization was resolved, but it had not. **ECF No. 20–1 at ¶ 21; ECF No. 25–1 at ¶ 21.**

On March 26, 2012 the U.S. Department of Labor notified Starwood that it would be auditing its labor certification petition. **ECF No. 20–1 at ¶ 22; ECF No. 25–1 at ¶ 22.** Starwood's labor certification petition was approved on August 21, 2012. **ECF No. 20–1 at ¶ 23; ECF No. 25–1 at ¶ 23.** Prior to receiving the approved labor certification, on August 3, 2012, the Bahía Beach Resort extended an employment offer to a candidate for the Director of Front Office position. **ECF No. 20–1 at ¶ 24; ECF No. 25–1 at ¶ 24.** Shortly thereafter, the candidate accepted the employment offer. *Id.* On August 26, 2012, the Bahía Beach Resort retained Eric S. González, a U.S. citizen of Mexican ancestry, as the Director of Front Office. *Id.* Since it had already identified a qualified individual to cover the Director of Front Office position, Starwood did not continue to pursue Abravanel's permanent residence petition. **ECF No. 20–1 at ¶ 25; ECF No. 25–1 at ¶ 25.**

While working at the Bahía Beach Resort in Puerto Rico, Abravanel met his current wife, Idalisse Camacho ("Camacho"), a resident of Puerto Rico and a United States citizen. **ECF No. 20–1 at ¶ 26; ECF No. 25–1 at ¶ 26.** Abravanel married Camacho in Puerto Rico in March 2012. **ECF No. 20–1 at ¶ 27; ECF No. 25–1 at ¶ 27.** As a result of his marriage to Camacho, Abravanel obtained a conditional permanent residence status and work authorization in July 2012. *Id.* He never informed this change in his immigration status to the Bahía Beach Resort. *Id.* Before his 2011 termination, Abravanel was aware that, by marrying his girlfriend, he would be able to acquire a conditional permanent resident status that would authorize him to work in the United States. **ECF No. 20–1 at ¶ 28; ECF No. 25–1 at ¶ 28.** Abravanel admitted that, prior to termination, he did not have any problems or discussions with Bathory. **ECF No. 20–1 at ¶ 29; ECF No. 25–1 at ¶ 29.** Aside from being terminated from his employment in the United States as a result of the expiration of his H–1B visa, Abravanel does not allege any other adverse employment action while he worked at Starwood. **ECF No. 20–1 at ¶ 30.** Abravanel admitted that he does not have any evidence that Bathory or anyone at Starwood discriminated against him. **ECF No. 20–1 at ¶ 31.** His discrimination claim is premised on a feeling or perception that he was treated differently because he was from Israel. *Id.*

Abravanel admitted that he did not present any internal complaints, alleging discrimination. **ECF No. 20–1 at ¶ 33.** While Abravanel worked for Starwood, he was aware of the company's policies, including the Associate Handbook, which was notified to him on July 7, 2010. **ECF No. 20–1 at 1 34; ECF No. 25–1 at ¶ 34.**

Abravanel knew that Starwood prohibited illegal discrimination and retaliation in the workplace. **ECF No. 20–1 at ¶ 35; ECF No. 25–1 at ¶ 35.** Starwood also posted these policies in conspicuous places throughout the company's offices, bulletin boards and employee lounges, among others. **ECF No. 20–1 at ¶ 36; ECF No. 25–1 at ¶ 36.** Starwood never obtained Abravanel's permits or permanent residence and did not bring him back to work. **ECF No. 25–1 at ¶ 39.**

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008) (quoting the former Fed.R.Civ.P. 56(c)).[1] When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). ▮▮▮▮ However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly-supported motion for summary judgment. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011). Thus, the court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.*

(quoting *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodriguez v. Pfizer Pharma.,* 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Perez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir.2001)).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson,* 522 F.3d at 175 (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Perez,* 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vazquez v. Lopez–Rosario,* 134 F.3d 28, 33 (1st Cir.1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

Abravanel claims that the defendant discriminated against him due to his being an

---

1. While Rule 56 was amended, effective December 1, 2010, "the substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki,* 629 F.3d 49, 54 n. 2 (1st Cir.2010) (citing Fed.R.Civ.P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed.R.Civ.P. 56(c) & (f).

Israeli national and citizen. **ECF No. 1.** He claims that Starwood terminated him from his position as Front Office Director at the Bahia Beach Resort after it failed to properly handle his work visa and failed to promptly file and obtain his permanent residency, all of which Starwood offered to do. *Id.* He also claims retaliation for complaining about the visa/permanent residence process. *Id.* In response, Starwood moves for summary judgment, requesting dismissal of the captioned complaint. **ECF No. 20.**

First, Starwood argues that Abravanel was legally obligated to leave the United States once his H–1B visa expired and Starwood terminated his employment in compliance with the Immigration and Naturalization Act since the permanent residence petition had not been approved. *Id.* at 3. Second, Starwood contends that Abravanel cannot establish a *prima facie* case of national origin discrimination. *Id.* at 6–7. Last, Starwood avers that, even if he did establish the *prima facie* case, Starwood had a legitimate, non-discriminatory reason for its decision to terminate Abravanel. *Id.* at 8.

Plaintiff counters that summary judgment should be denied because: (1) Starwood promised him that they would handle his permanent residency application since before his H–1B visa expired; (2) that Starwood was not under a legal obligation to terminate Abravanel while it handled his permanent residency application; and (3) despite its promises to Abravanel, and after failing to properly pursue his permanent residency application, defendant fired him. **ECF No. 25.**

### A. Title VII—National Origin Discrimination

■ Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … national origin." 42 U.S.C. § 2000e-2(a)(1). "National origin" refers to the country where a person was born or the country from which his or her ancestors came. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). Where, as here, there is no direct evidence of national origin discrimination, plaintiff must first establish a *prima facie* case under *McDonnell Douglas'* burden shifting paradigm. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Lockridge v. Univ. of Me. Sys.,* 597 F.3d 464, 470 (1st Cir.2010).

■ To establish a *prima facie* case, a Title VII plaintiff must show that: (1) he is a member of a protected class; (2) his employer took an adverse employment action against him; (3) he was otherwise qualified; and (4) his position remained open or was filled by a person with qualifications similar to his. *Johnson v. University of Puerto Rico,* 714 F.3d 48, 54 n. 6 (1st Cir.2013).

■ Under this framework, if the plaintiff establishes a *prima facie* case of discrimination, "the burden of production shifts to the defendant to produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Pearson v. Mass. Bay Transp. Auth.,* 723 F.3d 36, 40 (1st Cir.2013) (internal quotations omitted). Once the defendant produces this evidence, "the *McDonnell Douglas* framework disappears and the sole remaining issue is discrimination *vel non.*" *Id.* (internal quotations and alterations omitted). However, "[t]he burden of persuasion remains at all times with the plaintiff." *Mariani–Colón v. Home-*

*land Sec. ex rel. Chertoff,* 511 F.3d 216, 221 (1st Cir.2007). Therefore, "the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's ... national origin." *Rodríguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 19 (1st Cir.1999).

▇ Defendant posits that plaintiff is unable to comply with the *prima facie* showing of national origin discrimination inasmuch as he is unable to meet the second prong since he was not authorized to work. **ECF No. 20 at 7.** The Court, however, disagrees. On its face, Abravanel does establish a *prima facie* case of national origin discrimination. First, it is undisputed that Abravanel is an Israeli citizen and that his termination was an adverse employment action. Second, it is equally undisputed that Abravanel was qualified for the position. After all, he was occupying the position before his termination and the record holds no indication that he did not meet the position's requisites or that he had unsatisfactory performance evaluations.

▇ Although defendant sustains that Abravanel cannot meet prong three, the qualification prong, because he was no longer authorized to work in the United States (**ECF No. 20 at 7; ECF No. 30 at** 5), defendant's argument grasps at semantical straws. "Qualified" in this context does not relate to whether or not work authorizations or visas are required to occupy the position; but whether the employee has shown that he can satisfy and perform the requisites for the position.[2] Taking the facts in the light most favor-able to plaintiff, Abravanel has met his *prima facie* burden.

The burden now shifts to defendant to present a non-discriminatory reason for terminating him. Defendant posits that it has because Abravanel was no longer authorized to work in the United States. **ECF No. 20 at 8–9; ECF No. 30 at 6.** Plaintiff counters that defendant promised to handle his permanent residence application since 2010, before his H–1B visa had expired, but did so negligently. **ECF No. 25 at 5–6.** Plaintiff further asserts that defendant could have, and indeed should have, made available other employment options outside of the United States instead of terminating him. *Id.* Last, plaintiff avers that the reason he was unable to work in the United States arises from defendant's own negligence in handling his visa application and defendant ultimately gave the job to a United States citizen. *Id.*

▇ Despite plaintiff's assertions of what defendant should have or could have done to maintain his employment with Starwood, the uncontested fact remains that defendant has provided a legitimate, non-discriminatory reason for terminating plaintiff. Abravanel was no longer authorized to work in the United States. He was forewarned that he would be terminated if his permanent residency application was not approved by August 25, 2011, as that was the date that his H–1B visa expired. His application was not approved by that time and Starwood did what it had warned Abravanel it would do in case his application was not approved. Since Starwood has shown a legitimate, non-discriminatory reason for terminating Abravanel, the bur-

---

2. The American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* is interpreted in a manner similar to Title VII. *Bercovitch v. Baldwin School, Inc.,* 191 F.3d 8, 11 (1st Cir.1999). "Taking from the qualified prong of the ADA, "qualified" means an individual who ... can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This Abravanel has done.

den shifts back to plaintiff to show that the articulated reason is pretextual. *Thompson v. Coca–Cola Company*, 522 F.3d 168, 177 (1st Cir.2008). "To meet this burden, [Abravanel] must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin." *Id.* (citing *Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999)). Plaintiff has not met its burden here.

■ Again, despite any promises made to plaintiff on his permanent residency application, the fact remains that defendant could not guarantee the application's approval and that Abravanel knew his employment was conditioned to his being legally eligible to continue to work for Starwood. In this regard, the First Circuit has made clear that defendant's actions may not be perfect, but plaintiff must do more than reveal those imperfections. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991) ("Courts may not sit as super personnel departments, assessing the merits-or even rationality-of employers' nondiscriminatory business decisions.") Pretext requires more.

■ To establish pretext, "the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin." *Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999). In so assessing, "the court must look at the total package of proof offered by the plaintiff." *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 174 (1st Cir.2003). However, "the discriminatory intent of which plaintiff complains must be traceable to the person or persons who made the decision to fire him." *Thompson*, 522 F.3d at 177–78 ("If there is no proof of discriminatory animus on the part of a decisionmaker, a plaintiff must show more than that the decisionmaker's perception was incorrect; he must show that the decisionmaker did not believe in the accuracy of the information that he was given." (internal quotations and citations omitted.)) *Id.*

Here, the uncontested facts hold none. All of Abravanel's complaints stem from the delay in processing his permanent residence application. Delay alone does not prove pretext. Delay is not commensurate to discriminatory animus. Plaintiff must show that there was discriminatory intent, that the delay was somehow a subterfuge masking national origin discrimination. Yet, he has not.

■ The uncontested facts do not create a genuine issue of material fact to dispel the legitimate reason Starwood gave to terminate plaintiff. Starwood, or the firm it hired for this immigration matter, may not have acted with the desired diligence to try to secure a timely visa approval; but that simply is not enough to create pretext. *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir. 2002) ("On summary judgment, the question is whether plaintiff has produced sufficient evidence that he was discriminated against due to his national origin to raise a genuine issue of material fact."). Moreover, Starwood allowed Abravanel to take all his unused vacation and sick leave in an attempt to retain him, not as a pretext to fire him. As a result, the record is bereft of any indication that would make his national origin a discriminatory issue.[3] Al-

---

**3.** In fact, the first person hired to occupy the Front Office Director position, was a Venezuelan national with permanent residence status. This is consistent with the employer's reason that they needed someone who was authorized to work in the United States, be it from Israeli or Venezuelen origin. What remains the quintessential point here is whether

though it seems negligent to await until December 9, 2011 to file Abravanel's immigration documents when his H–1B visa had expired in August of 2011, it does not create a triable issue of fact on pretext. As stated above, courts are not called upon to question business decisions or judgments, less they conceal discrimination. Here, there simply is no link to tie the delay to discrimination. As the Eighth Circuit Court of Appeals noted in a similar case, "[e]ven if the [employer] could have effectuated an extension of his H–1B visa, the record is wholly devoid of any evidence that its failure to do so had anything to do with [plaintiff's] national origin." *Lixin Liu v. BASF Corp.*, 409 Fed.Appx. 988, 991 (8th Cir.2011). As is the case here, plaintiff "conflates national origin and alienage. His employment was terminated because of his immigration status, not his ... ancestry." *Id.*

In light of the foregoing, Abravanel has not shown that his termination was in any way a result of national origin discrimination or that the legitimate, non-discriminatory reason Starwood offered was a sham to mask national origin discrimination. Consequently, his claim fails. In light of the foregoing, defendant's request for summary judgment as to plaintiff's Title VII national origin discrimination claim is **GRANTED.**

### B. Retaliation

Abravanel also asserts that the defendant unlawfully retaliated against him for engaging in protected activity, in violation of Title VII.[4] **ECF No. 1.** Defendant moves for summary judgment, arguing that Abravanel's retaliation claim fails because he did not suffer an adverse employment action before his termination. **ECF No. 20.** Abravanel challenges summary judgment, stating that he has established a retaliation claim because the record contains numerous emails regarding his employment status and permanent residence application and because he was adamant that his residency process move along as Starwood had promised. Plaintiff argues that, with these emails, he has met his burden of establishing a *prima facie* case of retaliation against Starwood. **ECF No. 25 at 7–9.** Upon careful review of the summary judgment record and applicable case law, the Court agrees with defendant; Abravanel is unable to establish a *prima facie* retaliation claim.

To prove a *prima facie* case of Title VII retaliation, a plaintiff must show that (i) he engaged in protected conduct, (ii) he was thereafter subjected to some materially adverse action, and (iii) a causal connection existed between the protected conduct and the adverse action. *Rivera–Colón v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011); *Thompson v. Coca–Cola Co.*, 522 F.3d at 181; *see also Hernández–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 46–47 (1st Cir.1998). "A 'materially adverse' action is one that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimina-

the employee was authorized to work in the United States. After August 25, 2011, Abravanel was not. By like token, Starwood was under no obligation to agree to present a permanent residence petition on Abravanel's behalf. This demonstrates that, far from discriminating against him, Starwood wanted to continue to employ Abravanel by providing him assistance with his permanent residence petition in the United States.

4. Title VII establishes that it is unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ..., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

■

tion.'" *Pérez–Cordero v. Wal–Mart Puerto Rico, Inc.*, 656 F.3d 19, 31 (1st Cir.2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted)). "For a retaliation claim to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *Thompson v. Coca–Cola Co.*, 522 F.3d at 181. In addition, the Supreme Court has recently held that a plaintiff must "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. SW. Med. Ctr. v. Nassar*, ─── U.S. ───, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013).

■ Abravanel alleges Starwood retaliated against him because he requested the status of his work permit and visa application on multiple occasions. **ECF No. 1.** Yet, these requests, assuming they constitute protected activity,[5] can not be construed as the but-for cause of his termination. In contrast, the record refutes such assertion. First, Abravanel knew he would be terminated in the event that his visa application remained the same. That is, he knew he would cease working with Starwood once his H–1B visa expired, if he did not obtain a visa that would allow him to work in the United States. Second, Starwood forewarned Abravanel of the consequences of the failure to obtain a visa. Furthermore, the summary judg-

ment record is devoid of any evidence that would suggest defendant terminated Abravanel because he requested, or sent emails, on the status of his application.

As the First Circuit Court of Appeals has made abundantly clear: "To succeed on a retaliation claim, a plaintiff must show that [his] employer took some objectively and materially adverse action against [him] because [he] opposed a practice forbidden by Title VII...." *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir.2011). Undoubtedly, a termination is an adverse employment action. However, Abravanel never posed any objection as to any kind of discrimination while he worked with defendant. Even in the status emails regarding his visa application, he never voiced any worries or concerns regarding his treatment or that he felt his visa application was handled in a discriminatory fashion. Assuming these emails are considered protected activity, they still do not pass muster because plaintiff has not established the required causal link between these emails and his termination. As the Supreme Court confirmed in *Nassar*, "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."[6] 133 S.Ct. at 2534.

Here, Abravanel simply argues that he was retaliated against because he sent emails inquiring over his employment sta-

---

5. The Court harbors serious reservations over whether requesting or following-up on work and visa statuses can amount to protected conduct. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir.2009) ("The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." (quoting *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir.2000)) (internal quotation marks omitted)). For summary judgment

purposes and viewing the facts in the light most favorable to plaintiff, the Court simply assumes it is.

6. In so doing, the Supreme Court rejected the "less stringent standard that the plaintiff must only show that retaliation was a 'motivating' factor." *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 321 (1st Cir.2014).

tus and that of his permanent residence application, adding that Starwood lied to him about the process. **ECF No. 25** at 8–9. However, these assertions alone do not suffice in proving a but-for causal nexus to the protected activity. Defendant has shown that it terminated Abravanel when he was no longer authorized to work in the United States, a reason Starwood forewarned him about in August 5, 2011, before Abravanel sent the follow-up emails, and a reason Abravanel knew would happen if his application was not approved in time. As such, Abravanel's retaliation claim fails since he has neglected to argue the proper causal nexus, and, consequently, has not met his burden of establishing a *prima facie* retaliation case. With the record as it stands, a reasonable fact finder could not conclude there was a causal nexus between Abravanel's emails and his termination. Thus, defendant's motion for summary judgment as to plaintiff's retaliation claim is **GRANTED.**

### C. Supplemental Jurisdiction

 Since the federal claims have been dismissed, and no other grounds for jurisdiction exist, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating "if the federal claims are dismissed before trial, ... the state law claims should be dismissed as well."). Accordingly, plaintiff's claims brought pursuant to Commonwealth law are **DISMISSED WITHOUT PREJUDICE.**

### IV. Conclusion

Based upon the foregoing, defendant's motion for summary judgment (**ECF No.**

20) is **GRANTED** as to plaintiff's national origin discrimination and retaliation claims. The Court hereby **DISMISSES WITH PREJUDICE** plaintiff's Title VII claims against defendant, and **DISMISSES WITHOUT PREJUDICE** plaintiff's Commonwealth law claims.

**SO ORDERED.**